# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA GRAY,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHNSON, et al.,<br><br>    Defendants. | Case No. 1:13-cv-01473 DLB PC<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND<br><br>**THIRTY-DAY DEADLINE** |

Plaintiff Dana Gray ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action on September 12, 2013. Pursuant to Court order, Plaintiff filed a First Amended Complaint ("FAC") on May 5, 2005. She names Warden D. K. Johnson, Doctors R. Mitchell, V. Romero, Comelli, Cyril Rebel and John Ziomek, and FNP N. Loadholt as Defendants.[1]

**A.   LEGAL STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C.

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on October 16, 2013.

1

§ 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Id. at 1949. This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

**B.     SUMMARY OF PLAINTIFF'S ALLEGATIONS[2]**

Plaintiff is currently incarcerated at the Central California Women's Facility ("CCWF") in Chowchilla, California, where the events at issue occurred.

Plaintiff contends that Defendants did not "believe or verify" her history of low back pain secondary to lumbar scoliosis and leg length discrepancy. ECF 15, at 4. She alleges that Defendants acted with deliberate indifference by denying medications, medical appliances, specialist recommendations and other medical treatment that would prevent or slow down her degenerative lumbar spine condition. She also alleges that Defendants have denied consistent pain management.

---

[2] Plaintiff indicates that the hundreds of pages of exhibits submitted with her original complaint, as well as additional documentation, support and prove her claims. Plaintiff requests permission to file the documents, referring to the Court's prior page limit. Plaintiff is advised that she need not prove her allegations at this stage of the proceedings and voluminous exhibits are therefore unnecessary.

2

Plaintiff alleges that this failure to provide adequate care has caused irreversible harm and disability, as well as severe and unnecessary pain.

According to Plaintiff's allegations, it appears that she entered prison in 1998 with preventative care in place.  While at CCWF between 1998 and 2007, she was diagnosed by orthopedic and neurological specialists with chronic low back pain secondary to lumbar scoliosis in a progressive state of deterioration, neuropathy and hip pain.  During this time, she was undergoing "established chronic care modalities."  ECF No. 15, at 13.

Plaintiff contends that Defendants "broke away" from established treatments and callously discontinued pain management.  ECF No. 15, at 10.  Plaintiff made numerous attempts to receive preventative treatment, diagnostic testing and specialist care through co-pays and medical appeals.  However, none of the prison's physicians are board certified in "any areas of orthopedic, spine specialty or neurological specialization," even though they are called upon to diagnose and treat prisoners with serious and chronic diseases.  ECF No. 15, at 11.  Plaintiff contends that the standard of care requires that orthopedic and neurological conditions be referred to board certified specialists.

*Defendant Romero*

Plaintiff alleges that Defendant Romero was her primary care physician ("PCP") from 2007 through 2010.  Despite an established pre-incarceration diagnosis of leg length discrepancy, Plaintiff contends that Defendant Romero "systematically" undermined and discontinued all chronic care treatment in a retaliatory manner.  ECF No. 15, at 12.

Between 2007 and 2010, Defendant Romero disputed the need for "chronic care program (CCP) management of lumbar spine treatment" by insisting that Plaintiff "reiterate repetitively" her need for pain management and treatment.  ECF No. 15, at 13.  Defendant Romero began to dispute Plaintiff's established diagnosis by disagreeing as to whether Plaintiff needed pain management and refusing to order a new MRI.

Plaintiff contends that in one day, Defendant Romero abruptly discontinued all pain management, mobility restrictions, disability placement, etc.  On April 27, 2010, Defendant noted, "observed briskly walking from D yard medical.  Gait unlabored, steady, no evident distress, patient

3

waving arms gesturing to friend, walking backward while gesturing to friend.  Patient rapid gait, no pause to D13 housing.  Patient pivoting while walking." ECF No. 15, at 14.  Plaintiff believes that these observations reflect LVN notes dated April 27 and April 28, 2010.  At this time, Plaintiff states that she was taking 1200 mg of Neurontin and 200 mg of Ultram daily, and was pain free.

On April 29, 2010, Defendant Romero told Plaintiff that no pain management was needed, refused an MRI request and discontinued various accommodations.  Plaintiff's last MRI was January 25, 2006.

*Defendant Rebel*

Plaintiff alleges that Defendant Rebel was an orthopedic consult who failed to maintain her various established diagnoses.  Defendant Rebel ignored repeated complaints of pain and openly discouraged her PCP's continuity of care through "dismissive charting in consults [and] refusal to order definitive testing" for her conditions.

October 9, 2006, Defendant Rebel noted, "there really are no type of major orthopedic problems that need follow up.  Basically this patient has a longstanding history of chronic pain problems.  She has sciatica in the right leg.  Examination of her legs reveals no pelvic obliquity, no deformity, no leg length discrepancy noted on clinical exam." ECF No. 15, at 15.  Defendant Rebel did not order further tests and indicated that Plaintiff did not need to return to the ortho clinic.  Plaintiff contends that Defendant Rebel was abrupt and dismissive, and treated Plaintiff as a malingerer.

On August 9, 2007, Plaintiff complained of pain in her hips, tailbone and pelvic area.  Defendant Rebel noted, "Patient has too many problems."  A physical exam in July 2007 showed some minor osteoarthritic changes in both hips, but no significant problems.  Plaintiff alleges that Defendant Rebel ignored her pain and concluded that she did not need to come back to the ortho clinic.

*Defendant Ziomek*

Plaintiff alleges that Defendant Ziomek purposely ignored her orthopedic history, including his own issuance of a heel lift for her right leg in April 2004, and did not respond to her chronic pain.

On January 14, 2008, Plaintiff saw Defendant Ziomek in consult for left heel pain. Defendant Ziomek denied a heel lift.

On June 10, 2008, Plaintiff saw Defendant Ziomek for evaluation in connection with an appeal. Plaintiff believes that he was angry about doing a second-level evaluation, and did an exam by holding a pencil on the center of Plaintiff's head, then marking the wall she was standing against. He asked her to lift one leg, then the other, marking the wall each time. He compared the marks and said it was proof that she did not have a leg length discrepancy.

*Defendant Comelli*

Plaintiff contends that Defendant Comelli continued on the "reckless and callously indifferent" course of treatment laid out by Defendant Romero, and refused to order proper pain management and mobility restrictions.

On June 16, 2010, at the second level of review, Defendant "did a very little physical exam" and did not want to review or discuss previous ortho or neurological consults. ECF No. 15, at 17. Defendant Comelli ignored prior diagnoses and told her that she did not need any tests or pain medication. He also noted that there was "no evidence of medical need for renewal or Neurontin or Tramadol pain medications or pain management consultation referral found at this time." ECF No. 15, at 17.

*Defendant Loadholt, FNP*

Defendant Loadholt acted as the staff PCP for a second level review. She failed to respond to Plaintiff's complaints of persistent lower back pain and neurogenic symptoms. Plaintiff believes that Defendant Loadholt "assumed" that she was drug-seeking and "cheeking" pain medications. ECF No. 15, at 17.

An August 2, 2010, progress note by Defendant Loadholt states, "brisk walk [no] limits, patient unable to do L-spine . . . walk intact." Defendant Loadholt denied Plaintiff's request for Tramadol and Neurontin because there was no medical indication for the medications, and she did not discuss Plaintiff's pain. Defendant Loadholt only asked if Plaintiff's medications were discontinued for "cheeking." Plaintiff believes that Defendant Loadholt based her decisions on the charted observations of three LVNs, who observed Plaintiff from 50 feet away. The appeal was denied at the second level of review.

The appeal was also denied at the third level of review because Plaintiff's medical condition had been evaluated by licensed clinical staff and she was receiving treatment deemed medically necessary. Plaintiff contends that this denial was based on Defendant Loadholt's faulty evaluation.

Plaintiff alleges that a March 15, 2011, MRI confirmed her longstanding lumbar pathology and justified her complaints of pain.

*Defendant Mitchell*

Plaintiff alleges that Defendant Mitchell was responsible for supervising the medical staff who cared for her. Plaintiff believes that Defendant Mitchell failed to act on information contained in numerous appeals "that clearly indicated unconstitutional acts were occurring." ECF No. 15, at 19. Plaintiff alleges that Defendant Mitchell was grossly negligent in supervising subordinates, including Defendants Romero, Comelli and Loadholt.

On September 12, 2012, Defendant Mitchell interviewed Plaintiff for the second level appeal. Defendant Mitchell told Plaintiff that although Tramadol worked best for pain, Sacramento wanted Tylenol #3 given because it was cheaper. Defendant Mitchell also refused to answer Plaintiff's request for a TENS unit, and he said that she could not be classified as disabled because she was not bedridden and could answer a phone. The second level appeal was partially granted, but Plaintiff left the evaluation unsure if anything was accomplished because Defendant Mitchell would not clearly answer her questions.

Based on these allegations, Plaintiff alleges violations of the Eighth and Fourteenth Amendments.

6

C.  **ANALYSIS**

    1.    Fourteenth Amendment

Insofar as Plaintiff cites a violation of her rights under the Fourteenth Amendment based on medical care, her claims are properly analyzed under the Eighth Amendment. The concept of substantive due process is expanded only reluctantly and therefore, if a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. County of Sacramento v. Lewis, 523 U.S. 833, 843, 118 S.Ct. 1708 (1998) (quotation marks and citation omitted).

Accordingly, Plaintiff does not state a claim under the Fourteenth Amendment.

    2.    Eighth Amendment- Deliberate Indifference

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Plaintiff contends that each Defendant acted with deliberate indifference in their treatment decisions. However, Plaintiff's allegations fall short of stating a claim under the Eighth Amendment for the reasons discussed below.

a.      *Difference of Opinion*

"A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

As to Defendants Romero, Rebel, Ziomek, Comelli and Loadholt, Plaintiff's facts demonstrate that they either treated Plaintiff or examined her in connection with a medical appeal. Each Defendant ultimately determined that Plaintiff's condition did not warrant the treatment that she requested, i.e., pain medication and further testing. There is no evidence, however, that any Defendant chose treatment that was medically unacceptable under the circumstances, and that the decision was made in conscious disregard of an excessive risk to Plaintiff's health. Rather, Defendants' decisions were based on their examinations and/or observations. Plaintiff may disagree with their decisions, but her disagreement does not mean that their care violated the Eighth Amendment.

b.      *Negligence*

Insofar as Plaintiff cites the "standard of care" or "gross negligence," her allegations are insufficient to state an Eighth Amendment violation. Plaintiff generally alleges that the standard of care requires that she be seen by a specialist, as the physicians at CCWF are not board certified in orthopedics or neurology. However, "standard of care" is a term used in connection with negligence, and it has no bearing on an Eighth Amendment claim. An Eighth Amendment claim may not be premised on even gross negligence by a physician. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Moreover, the Court notes that Plaintiff *was* seen by at least two specialists. She simply didn't like their treatment decisions.

      c.    *Appeals*

Generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted). However, because prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006), there may be limited circumstances in which those involved in reviewing an inmate appeal can be held liable under section 1983. In the context of a medical appeal, Plaintiff must first state a viable claim against a health care provider before he can state a claim against any individual involved in the health care appeals process.

Plaintiff alleges that Defendant Mitchell failed to act on information suggesting constitutional violations in various medical appeals. However, Plaintiff has failed to state an underlying Eighth Amendment claim, and therefore Defendant Mitchell cannot be found to have violated the Eighth Amendment based on her review of the medical care at issue.

      d.    *Supervisory Liability*

As explained above, Plaintiff must demonstrate that each defendant personally participated in the alleged deprivation of his rights. Under section 1983, Plaintiff must link the named defendants to the participation in the violation at issue. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed under a theory of respondeat superior, and there must exist some causal connection between the conduct of each named defendant and the violation at issue. Iqbal, 556 U.S. at 676-77; Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Moss v. U.S. Secret Service, 711 F.3d 941, 967-68 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).

Plaintiff contends that Defendant Mitchell was grossly negligent in supervising subordinate medical providers. As there is no respondent superior liability under section 1983, Plaintiff cannot state a claim against Defendant Mitchell based on her failure to properly supervise subordinate employees.

For these reasons, Plaintiff's First Amended Complaint fails to state a claim under the Eighth Amendment.

### D.   CONCLUSION AND ORDER

The Court will provide Plaintiff with a **final** opportunity to file an amended complaint. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George, 507 F.3d at 607.

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 676-77. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted). Finally, an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's First Amended Complaint is dismissed, with leave to amend, for failure to state a claim under section 1983;

2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Within thirty (30) days from the date of service of this order, Plaintiff shall file an amended complaint;

3. **Plaintiff's amended complaint SHALL be limited to 25 pages, excluding exhibits; and**

4.  <u>If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim under section 1983.</u>

IT IS SO ORDERED.

Dated:   **November 6, 2014**               /s/ Dennis L. Beck
                                        UNITED STATES MAGISTRATE JUDGE