1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                      EASTERN DISTRICT OF CALIFORNIA

10

11    DANA GRAY,                              Case No. 1:13-cv-01473 DLB PC

12              Plaintiff,                    ORDER FINDING COGNIZABLE
                                              CLAIMS AND DISMISSING
13        v.                                  REMAINING CLAIMS

14    ROMERO, et al.,

15              Defendants.

16

17        Plaintiff Dana Gray ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis,

18    filed this civil rights action on September 12, 2013.

19        Pursuant to Court order, Plaintiff filed a First Amended Complaint on May 5, 2014, and a

20    Second Amended Complaint on February 23, 2015.  On April 27, 2015, the Court screened the

21    Second Amended Complaint and ordered Plaintiff to either amend or notify the Court of her

22    willingness to go forward on the Eighth Amendment claim against certain Defendants.

23        Plaintiff filed a Third Amended Complaint on July 6, 2015.  After obtaining leave of Court,

24    she filed a Fourth Amended Complaint on September 21, 2015.  She names Doctors V. Romero,

25    Comelli, Cyril Rebel, John Ziomek, and V. Mundunuri, and FNP N. Loadholt as Defendants.[1]

26    ///

27    ///

28    _____

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on October 16, 2013.

1

1

A.    **LEGAL STANDARD**

2

        The Court is required to screen complaints brought by prisoners seeking relief against a

3

governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

4

Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

5

"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

6

monetary relief from a defendant who is immune from such relief.  28 U.S.C.

7

§ 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid,

8

the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . .

9

fails to state a claim upon which relief may be granted."  28 U.S.C.

10

§ 1915(e)(2)(B)(ii).

11

        A complaint must contain "a short and plain statement of the claim showing that the pleader

12

is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but

13

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

14

do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly,

15

550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to

16

'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual

17

allegations are accepted as true, legal conclusions are not.  Id.

18

        To state a claim, Plaintiff must demonstrate that each defendant personally participated in the

19

deprivation of his rights.  Id. at 1949.  This requires the presentation of factual allegations sufficient

20

to state a plausible claim for relief.  Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572

21

F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this

22

plausibility standard.  Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

23

B.    **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

24

        Plaintiff is currently incarcerated at the Central California Women's Facility ("CCWF") in

25

Chowchilla, California, where the events at issue occurred.

26

        Plaintiff contends that from 1995 to 1997, she was incarcerated at Robert Presley Detention

27

Center.  During that time, she had low back pain, bilateral foot pain and pain in both heels.  She was

28

given personal supportive shoes and a right shoe heel lift to correct a leg length discrepancy.  These treatment notes were in her CCWF medical chart.

Upon incarceration at CCWF in January 1998, an orthopedic problem was noted on Plaintiff's Activity Chrono.

From 1998 through 2006, Plaintiff was seen by numerous primary care physicians ("PCPs") and specialists for complaints of chronic low back pain and a leg length discrepancy.  She was also seen for renewal of the right heel lift and various accommodations.  The specialists documented Plaintiff's conditions (leg length discrepancy and the beginning of lumber spine scoliosis), and suggested preventative care, pain management and physical therapy.

In 2004, an orthopedic specialist discussed the need for a spine specialist and preventative care for the beginning of the deterioration of lumbar spine scoliosis and chronic pain management of low back pain.

Plaintiff was seen by Defendant Ziomek, who maintained her right heel lift from April 2004 to April 2005, when he discontinued it.

In 2006, a spine specialist discussed continued use of the right heel insert and ordered symptomatic treatment for pain management, physical therapy, Neurontin for pain and anti-inflammatory medications.

From 2006 through 2010, Plaintiff was under the care of Defendants Romero, Rebel and Ziomek.  Plaintiff alleges that her established spine care was systematically discontinued "one medical need at a time by failing to maintain established care by first three specialists."  ECF No. 45, at 12.

Plaintiff was seen by Defendant Rebel for an orthopedic consultation on October 19, 2006.  She complained of chronic pain problems, low back pain, leg length discrepancy and lumbar scoliosis.  Plaintiff was in substantial pain, but Defendant failed to conduct appropriate tests and did not review prior tests.  Plaintiff told him about her problems, but he did not recommend a heel lift because he did not find a leg length discrepancy.  Plaintiff alleges that Defendant Rebel knew about the recommendations of a specialist, but failed to carry them out.  He was also dismissive and did

3

1  not take her complaints of pain seriously.  Defendant Rebel persisted in a course of treatment that

2  was ineffective despite knowing of Plaintiff's diagnoses and problems.

3       Plaintiff returned to Defendant Ziomek on June 10, 2008, in an attempt to get more

4  supportive shoes.  He determined that Plaintiff did not have a leg-length discrepancy and denied the

5  chrono.  Plaintiff contends that he disregarded her prior history and her complaints of pain.  He

6  failed to send her to a spine specialist, which delayed adequate medical treatment.

7       From 2006 through 2010, Plaintiff was under the care of PCP Defendant Romero.  She

8  diagnosed Plaintiff with osteoarthritis in her hips, sciatica and degenerative disc disease.  Defendant

9  did not test for, or acknowledge, Plaintiff's lumbar scoliosis or leg length discrepancy diagnosis.

10  Defendant ordered pain medications and appliances to assist mobility.  She maintained these chronos

11  until she "systematically began to discontinue them in a punitive manner."  ECF No. 45, at16.

12       Plaintiff's scoliosis, pain and mobility restrictions progressively worsened from 2007 to

13  2010, and Defendant Romero dismissed Plaintiff's complaints.  Defendant's attitude and willingness

14  to help became "undermined" every time she filed a health care appeal against her.  ECF No. 45, at

15  16.  Plaintiff contends that Defendant Romero failed to act on the recommendation of a spine

16  specialist, in disregard of the impact on Plaintiff.

17       Defendant told Plaintiff that it was her responsibility to prove her medications and chronos

18  were necessary, despite previous documentation since 1997.  Plaintiff had to argue with Defendant

19  Romero over treatment because she refused to acknowledge or carry out the care from prior

20  specialists.  Defendant Romero discontinued Plaintiff's mobility restrictions, without examination,

21  on April 29, 2010.  She then suddenly and completely discontinued all pain medications on May 3,

22  2010, and accused Plaintiff of being a malingerer and manipulating medications.  Plaintiff filed

23  several health care appeals asking to see a spine specialist, and Defendant Romero referred Plaintiff

24  to Defendant Rebel, an orthopedist, instead.  The discontinuation of Plaintiff's medication left her in

25  severe pain.

26       Plaintiff also contends that Defendant Romero directed staff LVNs to document Plaintiff's

27  pain level as "pain free," and note that she had unrestricted mobility.

28

1    Plaintiff filed several health care appeals against Defendant Romero because she refused to

2  maintain spine specialist care and pain management.  All medications, mobility restrictions and

3  appliances were discontinued without an examination or evaluation by a spine specialist.  Defendant

4  Romero also refused to order the appropriate testing for Plaintiff symptoms, such as an MRI.

5    Plaintiff believed that Defendant Romero was retaliating against her for filing appeals.

6    Plaintiff was evaluated by Defendant Comelli on June 16, 2010, in connection with her

7  health care appeal against Defendant Romero.  Defendant had Plaintiff fill out a pain assessment

8  form, but did not review it because he did not ask Plaintiff any questions about it.  Defendant also

9  ignored Plaintiff when she tried to tell him about prior recommendations and her diagnoses.

10  Defendant examined Plaintiff while she was fully-clothed and only asked her to walk a very small

11  distance.  He never examined Plaintiff for lumbar scoliosis, a leg length discrepancy or pelvic

12  asymmetry.  He also failed to order testing and chose to rely on an old MRI.  Defendant Comelli told

13  Plaintiff that she did not have medical needs that required pain management, or any other medication

14  other than Tylenol.  He also told her that her pain wasn't bad enough.  Plaintiff alleges that she was

15  denied adequate pain management and lumbar spine monitoring and care.  Plaintiff believes that

16  Defendant Comelli knew of Plaintiff's conditions but purposely avoided available documentation.

17    Plaintiff was also evaluated by Defendant Loadholt on August 2, 2010, in connection with

18  another health care appeal.  Plaintiff asked for pain medications, etc., but her requests were denied.

19  Defendant insinuated that Plaintiff was "cheeking" her medications and suggested that this was the

20  reason her medications were discontinued.  Defendant failed to take Plaintiff's history, failed to

21  conduct an adequate physical exam, failed to carry out the recommendations of the spine specialists,

22  and failed to order testing to validate her claims.  Defendant Loadholt did not take Plaintiff's

23  complaints of pain seriously and left her with inadequate pain relief for approximately three months.

24    On April 19, 2011, Plaintiff's neurosurgeon examined her, noting that she was in obvious

25  pain and had no conservative pain management.  He issued mobility restrictions on a permanent

26  basis, Neurontin and a pain medication regime to possibly include narcotics.

27

28

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant Mundunuri was Plaintiff's PCP from 2011 through 2015. She was "fairly compliant" in maintaining Plaintiff's lumbar spine care until 2015, when she broke away from working treatment modalities by refusing to fill out required paperwork to approve pain medications (Neurontin). Plaintiff had to file appeals and was left in unrelieved pain for up to 41 days. ECF No. 45, at 13. Plaintiff also believes that as a punitive measure, Defendant Mundunuri began to chart improvement when, in fact, Plaintiff was deteriorating.

On February 3, 2015, Plaintiff was still not receiving her Neurontin because Defendant Mundunuri refused to write a new non-formulatory request, or to examine Plaintiff's spine. Plaintiff rated her pain at an eight out of ten. Defendant told Plaintiff that she had to try Plaintiff on at least three different types of psych medications before she could reorder Neurontin. Defendant did not contact Plaintiff's mental health doctor and ignored Plaintiff's complaints about the psych medications.

On February 23, 2015, Plaintiff's psychiatrist agreed that the risk of violence with the psych medication contradicted its use for pain management. He noted that Plaintiff had effective pain relief with Neurontin.

On March 10, 2015, Plaintiff's pain was an eight out of ten, and she was still not on Neurontin. Defendant Mundunuri wrote a non-formulatory request for Neurontin on March 12, 2015, but it was denied on March 26, 2015, in favor of another psych medication. Defendant failed to check interactions or consult with Plaintiff's psychiatrist.

Defendant Mundunuri changed Plaintiff's medication on April 2, 2015, without an exam. This left her severely under medicated. Defendant denied additional medication on April 16, 2015. On April 23, 2015, Defendant Mundunuri told Plaintiff that she had done all that she could, and that Plaintiff had to deal with it.

On May 7, 2015, Defendant Mundunuri refused to address the status of Plaintiff's epidural, which Plaintiff learned had been denied on April 28, 2015.

Plaintiff's condition quickly worsened after a fall on an uneven surface on May 21, 2015. The next day, Plaintiff noticed clicking in her lumbar spine. On May 28, 2015, Plaintiff told

1  Defendant Mundunuri that she wanted to proceed with spinal fusion.  Defendant told her that she did

2  not meet the criteria for spinal surgery and refused a wheelchair.  On June 4, 2015, Defendant

3  refused to send Plaintiff back to the neurosurgeon for evaluation for spinal fusion.

4       Plaintiff filed several appeals to return to the neurosurgeon.  Defendant Mundunuri accused

5  Plaintiff of changing her mind constantly about having lumbar spinal fusion, but Plaintiff was only

6  following the recommended conservative treatment since surgery was a risk.  Plaintiff believes that

7  Defendant Mundunuri is attempting to undermine care by writing deceptive progress notes.

8       Plaintiff's Neurontin was restarted on June 19, 2015.

9       On August 10, 2015, Plaintiff alleges that Defendant Mundunuri performed an inappropriate

10  unclothed exam.  Plaintiff asked for a lower lumber spine exam, but Defendant refused.

11       On August 13, 2015, Defendant Mundunuri threatened to disrupt her pain medication,

12  insinuating that Plaintiff was drug-seeking.

13       Plaintiff's current mobility affects her daily living.  She was using a walker, but received a

14  wheelchair on August 28, 2015.

15  C.    **ANALYSIS**

16       1.    Eighth Amendment- Deliberate Indifference

17       While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical

18  care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference

19  to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012);

20  Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th

21  Cir. 2006).  Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat

22  [his] condition could result in further significant injury or the unnecessary and wanton infliction of

23  pain," and (2) that "the defendant's response to the need was deliberately indifferent."  Wilhelm, 680

24  F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)).  Deliberate indifference is shown by

25  "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm

26  caused by the indifference."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The

27

28

1    requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of

2    due care.  Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

3          As the Court found in the prior screening order, Plaintiff's allegations are sufficient, at the

4    pleading stage, to state an Eighth Amendment claim against Defendants Ziomek, Rebel, Romero,

5    Comelli, Mundunuri and Loadholt.[2]

6          2.      State Law Claims

7          To the extent that Plaintiff seeks to pursue a negligence claim under California law, the

8    California Tort Claims Act requires exhaustion of those claims with the state Victim Compensation

9    and Government Claims Board, and Plaintiff is required to specifically allege compliance in her

10   complaint.  Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; Mangold v. California Pub. Utils.

11   Comm'n, 67 F.3d 1470, 1477 (9th Cir.1995).  Failure to demonstrate such compliance constitutes a

12   failure to state a cause of action and will result in the dismissal of state law claims.  State of

13   California v. Superior Court (Bodde), 32 Cal.4th 1234, 1240 (2004).

14         Plaintiff's Fourth Amended Complaint now alleges proper compliance with administrative

15   remedies.  Plaintiff therefore states a negligence claim against Defendants Ziomek, Rebel, Romero,

16   Comelli, Mundunuri and Loadholt.

17         3.      Due Process

18         If a constitutional claim is covered by a specific constitutional provision, the claim must be

19   analyzed under the standard appropriate to that specific provision, not under the rubric of substantive

20   due process.  County of Sacramento v. Lewis, 523 U.S. 833, 843, 118 S.Ct. 1708 (1998) (quotation

21   marks and citation omitted).

22         Plaintiff's medical claims are properly analyzed under the Eighth Amendment and she does

23   not state a due process claim.  This cannot be cured by amendment.

24   ///

25   ///

26   ///

27

28   _____
     [2] The Court will instruct Plaintiff on service by separate order.

                                        8

**D.     CONCLUSION AND ORDER**

Plaintiff states an Eighth Amendment claim and negligence claim against Defendants Mundunuri, Ziomek, Rebel, Romero, Comelli and Loadholt.  She does not state any further claims, and her due process claim is dismissed without leave to amend.

IT IS SO ORDERED.

Dated:   **February 4, 2016**                    /s/ *Dennis L. Beck*

UNITED STATES MAGISTRATE JUDGE