UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA GRAY,<br><br>        Plaintiff,<br><br>vs.<br><br>ROMERO, et al.,<br><br>        Defendants. | 1:13cv-01473-DAD-GSA-PC<br><br>FINDINGS AND RECOMMENDATION TO DISMISS DUE PROCESS CLAIM WITHOUT LEAVE TO AMEND, CONSISTENT WITH MAGISTRATE JUDGE'S PRIOR ORDER IN LIGHT OF <u>WILLIAMS</u> DECISION<br><br>(ECF NO. 47.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |

**I.    BACKGROUND**

Dana Gray ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. This case was filed on September 12, 2013. (ECF No. 1.)

Plaintiff and Defendant Rebel have consented to magistrate judge jurisdiction. (ECF Nos. 6, 71.) The remaining Defendants declined to consent to magistrate judge jurisdiction. (ECF No. 117.)

1

The magistrate judge previously screened Plaintiff's complaint before any defendants appeared.[1] (ECF No. 47.) On February 4, 2016, the magistrate judge found that Plaintiff stated cognizable Eighth Amendment and negligence claims in the Fourth Amended Complaint against Defendants Mundunuri, Ziomek, Rebel, Romero, Comelli and Loadholt. (Id.) The magistrate judge dismissed Plaintiff's due process claim without leave to amend. (Id.)[2]

As described below, in light of Ninth Circuit authority, this court is recommending that the assigned district judge dismiss Plaintiff's due process claim without leave to amend, consistent with the February 4, 2016, screening order by the magistrate judge.

## II. WILLIAMS V. KING

On November 9, 2017, the United States Court of Appeals for the Ninth Circuit held that a magistrate judge lacked jurisdiction to dismiss a prisoner's case for failure to state a claim at the screening stage where the Plaintiff had consented to magistrate judge jurisdiction and Defendants had not yet been served. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Specifically, the Ninth Circuit held that "28 U.S.C. § 636(c)(1) requires the consent of all plaintiffs and defendants named in the complaint—irrespective of service of process—before jurisdiction may vest in a magistrate judge to hear and decide a civil case that a district court would otherwise hear." Id. at 501.

Here, Defendants were not served at the time the court issued its order dismissing the due process claim, and therefore had not appeared or consented to magistrate judge jurisdiction.

///

---

[1] Magistrate Judge Dennis L. Beck was the assigned magistrate judge until September 8, 2016. (ECF No. 127.)

[2] Subsequently, Defendants were served with process. On April 29, 2016, Defendant Rebel filed a motion to dismiss. (ECF No. 57.) On August 12, 2016, District Judge Dale A. Drozd was assigned to this case. On August 31, 2016, Defendants Mundunuri and Ziomek filed a motion for judgment on the pleadings. (ECF No. 122.) On March 28, 2017, the court granted Defendant Rebel's motion to dismiss, with leave to amend; granted Defendant Mundunuri's motion for judgment on the pleadings; and granted Defendant Ziomek's motion for judgment on the pleadings, with leave to amend. (ECF No. 184.) On May 2, 2017, Plaintiff submitted a Fifth Amended Complaint, which was stricken from the record on May 4, 2017, for exceeding page limits. (ECF No. 206.) On December 11, 2017, Plaintiff was granted leave to file a Sixth Amended Complaint within sixty days. (ECF No. 295.)

Accordingly, the magistrate judge lacked jurisdiction to dismiss Plaintiff's claims based solely on Plaintiff's consent.

In light of the holding in Williams, this court will recommend to the assigned district judge that he dismiss the due process claim previously dismissed by this court, for the reasons provided in the court's February 4, 2016, screening order.

## III. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named Defendant to a violation of his rights; there is no

*respondeat superior* liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**IV.    SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at the Central California Women's Facility (CCWF) in Chowchilla, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR), where the events giving rise to this action occurred. In the Fourth Amended Complaint, Plaintiff named as Defendants V. Romero, M.D.; A. Comelli, M.D.; N. Loadholt, FNP; C. Rebel, M.D.; V. Mundunuri, M.D.; and J. Ziomek, DPM.

Plaintiff alleges as follows in the Fourth Amended Complaint.

Plaintiff contends that from 1995 to 1997, she was incarcerated at Robert Presley Detention Center. During that time, she had low back pain, bilateral foot pain and pain in both heels. She was given personal supportive shoes and a right shoe heel lift to correct a leg length discrepancy. These treatment notes were in her CCWF medical chart.

Upon incarceration at CCWF in January 1998, an orthopedic problem was noted on Plaintiff's Activity Chrono.

From 1998 through 2006, Plaintiff was seen by numerous primary care physicians ("PCPs") and specialists for complaints of chronic low back pain and a leg length discrepancy. She was also seen for renewal of the right heel lift and various accommodations. The specialists documented Plaintiff's conditions (leg length discrepancy and the beginning of lumber spine scoliosis), and suggested preventative care, pain management and physical therapy.

In 2004, an orthopedic specialist discussed the need for a spine specialist and preventative care for the beginning of the deterioration of lumbar spine scoliosis and chronic pain management of low back pain.

Plaintiff was seen by Defendant Ziomek, who maintained her right heel lift from April 2004 to April 2005, when he discontinued it.

In 2006, a spine specialist discussed continued use of the right heel insert and ordered symptomatic treatment for pain management, physical therapy, Neurontin for pain and anti-inflammatory medications.

From 2006 through 2010, Plaintiff was under the care of Defendants Romero, Rebel and Ziomek. Plaintiff alleges that her established spine care was systematically discontinued "one medical need at a time by failing to maintain established care by first three specialists." ECF No. 45, at 12.

Plaintiff was seen by Defendant Rebel for an orthopedic consultation on October 19, 2006. She complained of chronic pain problems, low back pain, leg length discrepancy and lumbar scoliosis. Plaintiff was in substantial pain, but Defendant failed to conduct appropriate tests and did not review prior tests. Plaintiff told him about her problems, but he did not recommend a heel lift because he did not find a leg length discrepancy. Plaintiff alleges that Defendant Rebel knew about the recommendations of a specialist, but failed to carry them out. He was also dismissive and did not take her complaints of pain seriously. Defendant Rebel persisted in a course of treatment that was ineffective despite knowing of Plaintiff's diagnoses and problems.

Plaintiff returned to Defendant Ziomek on June 10, 2008, in an attempt to get more supportive shoes. He determined that Plaintiff did not have a leg-length discrepancy and denied the chrono. Plaintiff contends that he disregarded her prior history and her complaints of pain. He failed to send her to a spine specialist, which delayed adequate medical treatment.

From 2006 through 2010, Plaintiff was under the care of PCP Defendant Romero. She diagnosed Plaintiff with osteoarthritis in her hips, sciatica and degenerative disc disease. Defendant did not test for, or acknowledge, Plaintiff's lumbar scoliosis or leg length discrepancy diagnosis. Defendant ordered pain medications and appliances to assist mobility. She maintained these chronos until she "systematically began to discontinue them in a punitive manner." ECF No. 45, at16.

Plaintiff's scoliosis, pain and mobility restrictions progressively worsened from 2007 to 2010, and Defendant Romero dismissed Plaintiff's complaints. Defendant's attitude and willingness to help became "undermined" every time she filed a health care appeal against her. ECF No. 45, at 16. Plaintiff contends that Defendant Romero failed to act on the recommendation of a spine specialist, in disregard of the impact on Plaintiff.

Defendant told Plaintiff that it was her responsibility to prove her medications and chronos were necessary, despite previous documentation since 1997. Plaintiff had to argue with Defendant Romero over treatment because she refused to acknowledge or carry out the care from prior specialists. Defendant Romero discontinued Plaintiff's mobility restrictions, without examination, on April 29, 2010. She then suddenly and completely discontinued all pain medications on May 3, 2010, and accused Plaintiff of being a malingerer and manipulating medications. Plaintiff filed several health care appeals asking to see a spine specialist, and Defendant Romero referred Plaintiff to Defendant Rebel, an orthopedist, instead. The discontinuation of Plaintiff's medication left her in severe pain.

Plaintiff also contends that Defendant Romero directed staff LVNs to document Plaintiff's pain level as "pain free," and note that she had unrestricted mobility.

Plaintiff filed several health care appeals against Defendant Romero because she refused to maintain spine specialist care and pain management. All medications, mobility restrictions and appliances were discontinued without an examination or evaluation by a spine specialist. Defendant Romero also refused to order the appropriate testing for Plaintiff's symptoms, such as an MRI.

Plaintiff believed that Defendant Romero was retaliating against her for filing appeals.

Plaintiff was evaluated by Defendant Comelli on June 16, 2010, in connection with her health care appeal against Defendant Romero. Defendant had Plaintiff fill out a pain assessment form, but did not review it because he did not ask Plaintiff any questions about it. Defendant also ignored Plaintiff when she tried to tell him about prior recommendations and her diagnoses. Defendant examined Plaintiff while she was fully-clothed and only asked her to walk a very small distance. He never examined Plaintiff for lumbar scoliosis, a leg length

discrepancy or pelvic asymmetry. He also failed to order testing and chose to rely on an old MRI. Defendant Comelli told Plaintiff that she did not have medical needs that required pain management, or any other medication other than Tylenol. He also told her that her pain wasn't bad enough. Plaintiff alleges that she was denied adequate pain management and lumbar spine monitoring and care. Plaintiff believes that Defendant Comelli knew of Plaintiff's conditions but purposely avoided available documentation.

Plaintiff was also evaluated by Defendant Loadholt on August 2, 2010, in connection with another health care appeal. Plaintiff asked for pain medications, etc., but her requests were denied. Defendant insinuated that Plaintiff was "cheeking" her medications and suggested that this was the reason her medications were discontinued. Defendant failed to take Plaintiff's history, failed to conduct an adequate physical exam, failed to carry out the recommendations of the spine specialists, and failed to order testing to validate her claims. Defendant Loadholt did not take Plaintiff's complaints of pain seriously and left her with inadequate pain relief for approximately three months.

On April 19, 2011, Plaintiff's neurosurgeon examined her, noting that she was in obvious pain and had no conservative pain management. He issued mobility restrictions on a permanent basis, Neurontin and a pain medication regime to possibly include narcotics. Defendant Mundunuri was Plaintiff's PCP from 2011 through 2015. She was "fairly compliant" in maintaining Plaintiff's lumbar spine care until 2015, when she broke away from working treatment modalities by refusing to fill out required paperwork to approve pain medications (Neurontin). Plaintiff had to file appeals and was left in unrelieved pain for up to 41 days. ECF No. 45, at 13. Plaintiff also believes that as a punitive measure, Defendant Mundunuri began to chart improvement when, in fact, Plaintiff was deteriorating.

On February 3, 2015, Plaintiff was still not receiving her Neurontin because Defendant Mundunuri refused to write a new non-formulatory request, or to examine Plaintiff's spine. Plaintiff rated her pain at an eight out of ten. Defendant told Plaintiff that she had to try Plaintiff on at least three different types of psych medications before she could reorder

///

Neurontin. Defendant did not contact Plaintiff's mental health doctor and ignored Plaintiff's complaints about the psych medications.

On February 23, 2015, Plaintiff's psychiatrist agreed that the risk of violence with the psych medication contradicted its use for pain management. He noted that Plaintiff had effective pain relief with Neurontin.

On March 10, 2015, Plaintiff's pain was an eight out of ten, and she was still not on Neurontin. Defendant Mundunuri wrote a non-formulatory request for Neurontin on March 12, 2015, but it was denied on March 26, 2015, in favor of another psych medication. Defendant failed to check interactions or consult with Plaintiff's psychiatrist.

Defendant Mundunuri changed Plaintiff's medication on April 2, 2015, without an exam. This left her severely under medicated. Defendant denied additional medication on April 16, 2015. On April 23, 2015, Defendant Mundunuri told Plaintiff that she had done all that she could, and that Plaintiff had to deal with it.

On May 7, 2015, Defendant Mundunuri refused to address the status of Plaintiff's epidural, which Plaintiff learned had been denied on April 28, 2015.

Plaintiff's condition quickly worsened after a fall on an uneven surface on May 21, 2015. The next day, Plaintiff noticed clicking in her lumbar spine. On May 28, 2015, Plaintiff told Defendant Mundunuri that she wanted to proceed with spinal fusion. Defendant told her that she did not meet the criteria for spinal surgery and refused a wheelchair. On June 4, 2015, Defendant refused to send Plaintiff back to the neurosurgeon for evaluation for spinal fusion.

Plaintiff filed several appeals to return to the neurosurgeon. Defendant Mundunuri accused Plaintiff of changing her mind constantly about having lumbar spinal fusion, but Plaintiff was only following the recommended conservative treatment since surgery was a risk. Plaintiff believes that Defendant Mundunuri is attempting to undermine care by writing deceptive progress notes.

Plaintiff's Neurontin was restarted on June 19, 2015.

///

///

On August 10, 2015, Plaintiff alleges that Defendant Mundunuri performed an inappropriate unclothed exam. Plaintiff asked for a lower lumber spine exam, but Defendant refused.

On August 13, 2015, Defendant Mundunuri threatened to disrupt her pain medication, insinuating that Plaintiff was drug-seeking.

Plaintiff's current mobility affects her daily living. She was using a walker, but received a wheelchair on August 28, 2015.

## V. ANALYSIS

### 1. Eighth Amendment- Deliberate Indifference

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

As the Court found in the prior screening order, Plaintiff's allegations are sufficient in the Fourth Amended Complaint, at the pleading stage, to state an Eighth Amendment claim against Defendants Ziomek, Rebel, Romero, Comelli, Mundunuri and Loadholt.

### 2. State Law Claims

To the extent that Plaintiff seeks to pursue a negligence claim under California law, the California Tort Claims Act requires exhaustion of those claims with the state Victim

Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in her complaint. Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir.1995). Failure to demonstrate such compliance constitutes a failure to state a cause of action and will result in the dismissal of state law claims. State of California v. Superior Court (Bodde), 32 Cal.4th 1234, 1240 (2004).

Plaintiff's Fourth Amended Complaint alleges proper compliance with administrative remedies. Plaintiff therefore states a negligence claim in the Fourth Amended Complaint against Defendants Ziomek, Rebel, Romero, Comelli, Mundunuri and Loadholt.

### 3. Due Process

If a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. County of Sacramento v. Lewis, 523 U.S. 833, 843, 118 S.Ct. 1708 (1998) (quotation marks and citation omitted).

Plaintiff's medical claims are properly analyzed under the Eighth Amendment and she does not state a due process claim. This cannot be cured by amendment.

## VI. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Plaintiff's due process claim in the Fourth Amended Complaint be dismissed without leave to amend.

These findings and recommendation are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days of the date of service of these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be

///
///
///
///
///

served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**December 13, 2017**__         __**/s/ Gary S. Austin**__
                                                                UNITED STATES MAGISTRATE JUDGE